IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| STANFORD HEALTH CARE,  )<br>  )<br>           Plaintiff,  )<br>  )<br>   vs.  )<br>  )<br>HIGHMARK BLUE CROSS BLUE  )<br>SHIELD,  )<br>  )<br>           Defendant, | 2:23-CV-01732-MJH |

OPINION AND ORDER

Plaintiff, Stanford Health Care, brings the within action against Defendant, Highmark Blue Cross Blue Shield, for Breach of Implied-in-Fact Contract (Count I) and Quantum Meruit (Count II), arising from Highmarks' alleged failure to pay for properly billed medically necessary services, supplies, and/or equipment that Stanford rendered to Highmark's members. (ECF No. 1-1).  Highmark moves for dismissal of Stanford's claims pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 8).  The matter is now ripe for consideration.

Following consideration of Stanford's Complaint (ECF No. 1-1), Highmark's Motion to Dismiss (ECF No. 8), the respective briefs (ECF Nos. 9-11), and for the following reasons, Highmark's Motion to Dismiss will be denied.

   I.   Background

Stanford operates a medical center, located in Santa Clara County, California. (ECF No. 1-1 at ¶ 3). Stanford renders medical care to those in need of such care. *Id*. Such persons included fourteen (14) patients whose health insurance benefits were sponsored and/or administered by Highmark.  *Id* at ¶¶ 8, 10. Stanford rendered medical care (including emergency medical care in at least one instance) to the Highmark's members between April 3, 2019 and

December 30, 2021. *Id* at ¶ 10. Stanford's usual and customary charges for the medically necessary care rendered to the Highmark's members amounted to $2,300,030.25. *Id*.

During the relevant time period, Stanford and California Physicians' Services, Inc., d.b.a. Blue Shield of California ("BSC"), entered into a written agreement (the "Stanford/BSC Contract"). *Id* at ¶ 8. According to the BSC Contract, Stanford agreed to render medically necessary care to enrollees of BSC's health plans, including out-of-state affiliates of BSC who were part of the Blue Cross Blue Shield National Accounts Program (the "BlueCard® Program"). *Id*. In exchange for access to the discounted rates called for in the Stanford/BSC Contract, each such affiliated health plan agreed to pay hospitals, like Stanford, for medically necessary care rendered to the individual enrollees of such health plan. *Id* at ¶ 9. Highmark was allegedly a member of the BlueCard® Program, and it accessed the BSC Contract so that its members could obtain care at the preferential rates. *Id*. Stanford avers that Highmark agreed to pay contracted BSC hospitals pursuant to the terms of the Stanford/BSC Contract. *Id*. Applying the rates found in the Stanford/BSC Contract, Stanford alleges that the balance owed for the care it rendered to Highmark's members amounted to $828,911.42. *Id* at ¶ 18. Stanford avers it properly billed Highmark for the medically necessary services, supplies and/or equipment it rendered to Higmark's members. *Id* at ¶ 15. The Complaint asserts that Highmark failed to pay Stanford as per the Stanford/BSC Contract. *Id* at ¶ 16

II.  Relevant Standard

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir.

2

2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer

evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

III. Discussion

A. Breach of Implied-in-Fact Contract

Highmark contends that Stanford's Breach of Implied-in-Fact Contract claim is insufficiently pleaded, because the Complaint fails to allege material terms of the implied-in-fact contract, or that Highmark received consideration, and it fails to allege a requisite "meeting of the minds."

"A contract implied in fact has the same legal effect as any other contract. It differs from an express contract only in the manner of its formation." *Ingrassia Constr. Co. v. Walsh*, 486 A.2d 478, 483 n.7 (Pa. Super. 1984). Whereas, "[a]n express contract is formed by either written or verbal communication[,] [t]he intent of the parties to an implied in fact contract is 'inferred from their acts in light of the surrounding circumstances.'" *Id*. (quoting *Cameron v. Enyon*, 3 A.2d 423, 424 (Pa. 1939)). As with all contracts, however, an implied-in-fact contract exists only if "the parties . . . agree upon the material and necessary details of the bargain," *Lombardo v. Gasparini Excavating Co.*, 123 A.2d 663, 666 (Pa. 1956), and the agreement is supported by adequate consideration. *Thomas v. R. J. Reynolds Tobacco Co.*, 38 A.2d 61, 63 (Pa. 1944).

1. Material Terms

Highmark maintains that Stanford's Complaint fails to allege a material term, because it contains no detail as to the price Highmark allegedly agreed to pay for the services rendered. In response, Stanford contends that it has sufficiently pleaded the actual and specific dollar amounts owed under the contract.

In Pennsylvania, price is considered a material term of a contract. See, e.g., *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 669 (Pa. Super. 2007). However, "agreement on the price to be paid for products or services can be inferred from a history of payment of bills that the other party has submitted." *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652 (Pa. 2009)

Here, Stanford sufficiently alleges price arrangements for each claim, wherein the Complaint and its Exhibit enumerate the "Total Charges" for each claim, the "Total Paid" for each claim, and the "Contractual Underpaid" for each claim. Further, Stanford alleges that Highmark, as a participant in the BlueCard® Program, agreed to pay the discounted rate provided for within the Stanford/BSC Contract in exchange for medically necessary care rendered to Highmark enrollees. Finally, Stanford alleges that Highmark had performed under this contract in the past, thereby ratifying the implied-in-fact contract through past payments for services. Therefore, at the pleading stage, Stanford has sufficiently pleaded allegations of material terms for an implied-in-fact contract, vis-à-vis price.

2. Consideration

Highmark next contends that the Complaint fails to allege the consideration that Highmark received for entering the implied-in-fact contract. Stanford maintains that its Complaint identifies consideration through the detriment it incurred as a result of Highmark's payment of less than full payment after Stanford had performed services to Highmark's members pursuant Highmark's request.

As with all contracts, an implied-in-fact contract exists only if "the agreement is supported by adequate consideration." *Atl. States Ins. Co. v. Copart, Inc.*, 609 F.Supp.3d 379, 390 (E.D. Pa. 2022). "Consideration is defined as a benefit to the party promising, or a loss or

5

detriment to the party to whom the promise is made." *Pennsylvania Envtl. Def. Found. v. Commonwealth*, 255 A.3d 289, 305 (Pa. 2021) (citations omitted).

Here, Stanford's Complaint avers that Highmark received consideration, namely Highmark benefited from the medically necessary healthcare services that Stanford provided to Highmark's members. Further, Stanford's Complaint alleges that Highmark retained premiums paid by Highmark's members in connection to said services. Stanford's Complaint also asserts that, by providing services to Highmark's members, Stanford assisted Highmark in meeting its obligations to arrange for timely medical care to members. Such allegations, taken as true at the pleading stage, are sufficient to support consideration in Stanford's implied-in-fact contract claim.

3. Meeting of the Minds

Finally, as to Stanford's breach of an implied-in-fact contract claim, Highmark argues that the Complaint fails to sufficiently allege a "meeting of the minds," because the Complaint does not allege direct communications between Highmark and Stanford. Further, Highmark contends that it neither agreed nor promised to pay Stanford any specific amount for any specific services. Highmark maintains that, although Stanford sought pre-authorization for services provided to Highmark's members, the Complaint fails to allege that Highmark agreed to pay a specific amount for any of said pre-authorized services.

Stanford argues that Highmark's focus on pre-service communications is misplaced, because the nature of the contractual arrangement and customary practices of the health care industry do not always permit pre-service communications. Stanford also asserts that Highmark, in fact, agreed to the discount services rate when it subscribed to the Stanford/BSC Contract via the BlueCard® Program

6

A true and actual meeting of the minds is not necessary to form a contract. 1 S. Williston, *Williston on Contracts* §§ 66, 94 (3d ed.1957); 1 A. Corbin, *Corbin on Contracts* § 107 (1963). In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter. *Ingrassia Const. Co., Inc. v. Walsh*, 337 Pa.Super. 58, 66, 486 A.2d 478, 482–83 (1984). Here, at the pleading stage, the Court's careful review of the Complaint demonstrates that Highmark's arguments, as regards a "meeting of the minds," are unavailing. Stanford has sufficiently alleged sufficient outward and objective manifestations of the parties' conduct to support that the parties agreed to a payment arrangement for health care services. This includes allegations of the course of conduct whereby Highmark made payments for services in the past. Therefore, Stanford has sufficiently alleged a claim for breach of an implied-in-fact contract.

Accordingly, Highmark's Motion to Dismiss, as regards Count I, will be denied.

B.  Quantum Meruit

Highmark next argues that Stanford has insufficiently pleaded its claim for quantum merit, because the Complaint has not alleged any facts to suggest that Stanford conferred a benefit upon Highmark. Specifically, Highmark contends that allegations of benefits to members alone are insufficient. As with its arguments above, Stanford maintains that Highmark received benefits through the premiums it retained from its members in exchange for Highmark's members receipt of unfettered healthcare services through Stanford.

A plaintiff must prove the same elements for quantum meruit and unjust enrichment. *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir.2000). The elements for these claims are: "(1) the plaintiff conferred benefits on the defendant; (2) the defendant realized those benefits; and (3) the defendant accepted and retained those benefits under circumstances in

7

which it would be inequitable for it to retain them without payment of value." *Bunnion v. Conrail*, 108 F.Supp.2d 403, 427 (E.D.Pa.1999), *aff'd without op.*, 230 F.3d 1348 (3d Cir.2000). Here, the Court reiterates its "consideration" analysis from above to conclude that Stanford has sufficiently alleged that Highmark and its members received a benefit from Stanford's actions. *See* Section III.A.2, *supra*.

Accordingly, Highmark's Motion to Dismiss, as regards Count II, will be denied.

C.   Statute of Limitations

Finally, Highmark maintains that two of the fourteen claims for payment identified in Exhibit A of the Complaint are barred by the applicable statute of limitations for breach of contract and quantum meruit.  Specifically, Highmark contends that Stanford filed its Complaint on September 5, 2023; and therefore, any medical claim that accrued prior to September 5, 2019 is time barred.  Highmark identifies two such medical claims, based upon the patient discharge date.  In response, Stanford contends that the causes of action did not accrue until payment disputes on said claims arose.   Highmark counters that, under Stanford's argument, the Complaint has not sufficiently stated the accrual date to properly analyze a statute of limitations defense.

A four-year statute of limitation governs Stanford's breach of implied-in-fact contract and quantum meruit claims. *See* 42 Pa.C.S. § 5525(4). In an action for breach of contract, the statute begins to run on the date the action accrues—the date of the breach. *Packer Soc. Hill Travel Agency, Inc. v. Presbyterian Univ. of Pa. Med. Ctr.*, 430 Pa.Super. 625, 635 A.2d 649 (1993).  The breach occurs when payment under the contract is demanded and not made. *Id*.  In a motion to dismiss, "[a] complaint is subject to dismissal for failure to state a claim on statute of

limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

Here, the accrual date would have occurred on a date after which Stanford demanded payment for services, and when Highmark subsequently failed to tender complete payment. Upon review of the Complaint and its Exhibit, the same do not enumerate when Highmark allegedly failed to tender payment. Therefore, it is not apparent on the face of the Complaint that Highmark would have a statute of limitations defense to these claims. Thus, Highmark's statute of limitations defense is premature.

Accordingly, Highmark's Motion to Dismiss claims, based upon a statute of limitations defense, will be denied.

ORDER

Following consideration of the foregoing and for the reasons stated in this Court's Opinion, Highmark's Motion to Dismiss is denied. Highmark shall file its Answer on or before February 28, 2024.

DATED this 14th day of February, 2024.

BY THE COURT:

MARILYN J. HORAN
United States District Judge